IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

JUL 29 2019

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| NORTH PRESIDIO, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:19-CV-222-A |
| | § | |
| LOWE'S HOME CENTERS, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of defendant, Lowe's
Home Centers, LLC, to dismiss. The court, having considered the
motion, the response of plaintiff, North Presidio, LLC, the
reply, and the applicable authorities, finds that the motion
should be granted.

I.

Background

Plaintiff initiated this action by the filing of its
original petition in the 153rd Judicial District Court of Tarrant
County, Texas. Doc.[1] 1 at Ex. A-2. Defendant removed this action
to this court by notice of removal filed March 18, 2019. Doc. 1.
On April 18, 2019, the court ordered the parties to replead and
drew plaintiff's attention specifically to the pleading

_____

[1]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in
this Case No. 4:19-CV-222-A.

requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. Doc. 11 at 2 n.2. Plaintiff then filed an amended complaint on May 6, 2019, doc. 14, in which it alleged:

Plaintiff owns property and intends to develop it into a large mixed-use development. See id. at 2, ¶ 4. Plaintiff initially bought the property, in large part, due to information from defendant's broker that it was interested in being an anchor tenant. Id. at ¶ 6. Plaintiff negotiated to lease part of the property (the "Lowe's Tract") to defendant on which a Lowe's store would be developed. Id. Much of plaintiff's planning and design of the development was centered around the contemplated store. Id. at 3, ¶ 6. As a result of the negotiations, plaintiff and defendant entered into an Agreement to Enter into Ground Lease dated June 23, 2017 (the "Agreement"). Id. at ¶ 8. Pursuant to the Agreement, defendant agreed to enter into a ground lease (the "Lease") for the Lowe's Tract upon certain conditions being met, including plaintiff's securing of certain governmental approvals, satisfactory inspections, and delivery of acceptable title and survey. Id. at ¶ 9. All of those conditions were met. Id. at 7, ¶ 18. The Agreement also contemplated that the parties would enter into an Easements, Covenants, Conditions and Restrictions ("ECCR") agreement and a Site Development Agreement ("SDA"), pursuant to which plaintiff would perform site work on

2

the Lowe's Tract. Id. at 3-4, ¶ 9. The Agreement also provides that plaintiff agreed to comply with defendant's development criteria for any work done prior to closing and the SDA's execution, and defendant gave those criteria to plaintiff. Id. at 4, ¶ 10. In addition, the Agreement states that the SDA would require defendant to reimburse plaintiff for its share of the project costs up to $4,320,000. Id.[2]

Plaintiff spent considerable funds and resources to ensure that the property was developed according to defendant's development criteria. Id. at ¶ 11. The parties communicated weekly about the site development work, and during those communications, plaintiff regularly asked defendant to confirm that the work was being done according to its requirements. Id. at 5, ¶ 12. During a number of those conversations, defendant affirmed that it assented to the terms of the SDA, drafts of which were being exchanged. Id. Based upon defendant's frequently-stated intention to consummate the Agreement and enter into the Lease, ECCR, and SDA, plaintiff spent substantial funds and resources to develop the property in a way that would accommodate the contemplated work on the Lowe's Tract and entered into leases with other tenants, including two that were

---

[2]Specifically, the Agreement states that defendant has no obligation to close on the Lease unless the parties agreed by the closing date to an SDA that, among other things, required defendant to reimburse plaintiff for the above-mentioned costs. Id. at App. 008, § 7(b).

conditioned upon defendant becoming a tenant in the development. Id. at 5-6, ¶ 12.

On August 3, 2018, plaintiff sent defendant final versions of the Lease, ECCR, and SDA for execution. Id. at 6, ¶ 13. In an email dated August 2018 and sent September 6, 2018, defendant told plaintiff that it did not intend to move forward with the closing of the Lease. See id. at 6, ¶ 14.[3] The email referenced a conversation the previous day between "Mr. Stoner" and "Mr. De la Vega," plaintiff's principal, in which "Mr. Stoner" told "Mr. De la Vega" that defendant was not moving forward due to "change in leadership." Id. Defendant ignored plaintiff's request for reimbursement for certain site work and refused to agree to the release of defendant's $50,000 earnest money deposit.[4] Id. at 6, ¶ 15.

\* \* \* \* \* \* \*

Plaintiff brought four causes of action against defendant, which the court is simplifying as follows:

Count One is a breach of contract claim based on plaintiff's allegation that defendant breached the Agreement by refusing to

---

[3]The court is assuming that plaintiff's mentions of a "letter from Mr. Stoner . . . dated 'August ___, 2018'" and a "September 6, 2018 email," doc. 14 at 6, ¶ 14, are both referring to the notification from defendant to plaintiff mentioned in the first sentence of that paragraph.

[4]The Agreement required defendant to deposit $50,000 with Federal National Title Insurance Company ("Federal") as earnest money to bind the Agreement and provided that if defendant defaulted under the Agreement, Federal may deliver the deposit to plaintiff. Doc. 16 at App. 002, § 3.

enter into the Lease, ECCR, and SDA. Id. at 7, ¶ 20. Plaintiff alleged that it incurred over $6 million in damages from defendant's breach. Id. Plaintiff brought the following three claims in the alternative in case the court did not find the SDA to be binding.

Count Two is a quantum meruit claim based on plaintiff's allegation that it performed site work for defendant, and defendant accepted, used, and enjoyed the site work and was reasonably notified that plaintiff expected compensation for it. Id. at 8-9, ¶ 26.

Count Three is a promissory estoppel claim based on plaintiff's allegation that it detrimentally relied on defendant's promise to reimburse it for the site work. Id. at 9, ¶ 29.

Count Four is a fraud by non-disclosure claim based on plaintiff's allegation that defendant failed to disclose that it would not proceed with opening the planned Lowe's store, despite having a duty to do so, to induce plaintiff to perform the site work. Id. at 10 ¶ 33.

II.

Grounds of the Motion

Defendant moved to dismiss plaintiff's breach of contract claim for failure to state a claim upon which relief can be

5

granted to the extent plaintiff seeks damages in excess of $50,000 plus accrued interest.[5] Defendant also moved to dismiss plaintiff's quantum meruit, promissory estoppel, and fraud claims for failure to state a claim upon which relief can be granted.

## III.

### Analysis

A. Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Id. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any

---

[5] It is apparent from the motion to dismiss that defendant is not moving to dismiss plaintiff's entire breach of contract claim but is only seeking to limit plaintiff's damages. See, e.g., doc. 15 at 4 & 12-14.

factual underpinnings. See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. <u>Id.</u> To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. <u>Twombly</u>, 550 U.S. at 566-69. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

Rule 9(b) of the Federal Rules of Civil Procedure sets forth a heightened pleading standard for fraud claims. The plaintiff must "plead enough facts to illustrate the 'who, what, when, where, and how' of the alleged fraud." <u>Carroll v. Fort James Corp.</u>, 470 F.3d 1171, 1174 (5th Cir. 2006). "In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading." <u>Id.</u> The plaintiff may plead fraud on information and

belief when the facts relating to the alleged fraud are peculiarly within the defendant's knowledge, but "the complaint must set forth a factual basis for such belief." United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 903 (5th Cir. 1997).

B.    No Plausible Claim for Breach of Contract Damages in Excess of $50,000 Plus Accrued Interest Has Been Alleged

Defendant's motion to dismiss plaintiff's breach of contract claim to the extent it seeks more than $50,000 plus accrued interest is based on Section 13(b) of the Agreement, which states:

> IF THE [LEASE] IS NOT CONSUMMATED ON ACCOUNT OF
> [DEFENDANT'S] DEFAULT HEREUNDER, [PLAINTIFF] SHALL BE
> ENTITLED, AS ITS SOLE AND EXCLUSIVE REMEDY HEREUNDER,
> TO RECEIPT OF THE DEPOSIT, TOGETHER WITH ALL INTEREST
> EARNED THEREON, AS FULL AND COMPLETE LIQUIDATED DAMAGES
> FOR SUCH DEFAULT OF [DEFENDANT] . . . . THE RIGHT TO
> RETAIN SUCH SUMS AS FULL LIQUIDATED DAMAGES IS
> [PLAINTIFF'S] SOLE AND EXCLUSIVE REMEDY IN THE EVENT OF
> DEFAULT OR FAILURE TO PERFORM HEREUNDER BY [DEFENDANT],
> AND [PLAINTIFF] HEREBY WAIVES AND RELEASES ANY RIGHT TO
> (AND HEREBY COVENANTS THAT IT SHALL NOT) SUE
> [DEFENDANT] AS TO ANY CLAIMS, INJURY OR LOSS ARISING
> FROM OR IN CONNECTION WITH THIS AGREEMENT . . . TO
> RECOVER ANY DAMAGES IN EXCESS OF SUCH SUMS.

Doc. 16 at App. 016, § 13(b).[6] The default described in that section is exactly what plaintiff accused defendant of, and

---

[6] Defendant filed the Agreement as an exhibit to its motion to dismiss. Doc. 16. The Agreement forms the basis of plaintiff's claims, and plaintiff refers to it throughout its amended complaint, making it appropriate for the court to consider the Agreement in ruling on the motion to dismiss. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000).

plaintiff never alleged that the provision is unenforceable. In fact, in its amended complaint, plaintiff asked the court to "tak[e] into account both damage limit caps," including the limit of $50,000 plus accrued interest. Doc. 14 at 8, ¶ 23. The plain language of § 13(b) bars plaintiff from seeking more than $50,000 plus accrued interest from the alleged breach.[7]

In the brief supporting its response, plaintiff advanced two principal arguments as to why that section should not limit its damages. First, it argued that a contractual limitation of liability is an affirmative defense under Texas law. Doc. 18 at 8, ¶ 17. Assuming that is true, the court may dismiss a claim "if a successful affirmative defense appears clearly on the face of the pleadings." Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986); see also Thompson v. Deutsche Bank Nat'l Trust Co, 775 F.3d 298, 302 (5th Cir. 2014). "'[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th

---

[7]Defendant argued that § 13(b) is a limitation of liability, rather than a liquidated damages clause. Doc. 16 at 6. Nonetheless, it is unnecessary to categorize § 13(b) because, in either case, plaintiff's damages for defendant's alleged breach of the Agreement cannot exceed $50,000 plus accrued interest. And, while the court refers to that section as a "limitation" throughout this opinion, the court is expressing no viewpoint as to the characterization of that section.

Cir. 1993)). As stated in note 6, <u>supra</u>, the court is considering the Agreement as part of the pleadings because plaintiff refers to it throughout the amended complaint and it is central to plaintiff's claims. Section 13(b) clearly bars plaintiff from recovering more than $50,000 plus accrued interest for defendant's alleged breach of the Agreement.

Second, plaintiff argued that the $4,320,000 limitation in § 7(b), rather than the limitation of $50,000 plus accrued interest in § 13(b), applies to the alleged breach. Doc. 18 at 10, ¶ 25. Section 7(b) only provides, in relevant part, that defendant had no duty to close unless the parties agreed by the closing date to an SDA imposing on defendant a duty to reimburse plaintiff for its share of the project costs up to $4,320,000. Doc. 16 at App. 007-008, § 7. Nothing in that section could be construed as negating § 13(b)'s limitation. In support of its contention, plaintiff argued that the proposed SDA is enforceable, even though defendant refused to execute it. Doc. 18 at 8-11 ¶¶ 20-28. Whether that is true is irrelevant, because plaintiff did not bring a claim for breach of the proposed SDA and is therefore not seeking to enforce it.[8] The only breach of

---

[8] Even if it did, the allegations would not support such a claim. Plaintiff alleged that "[defendant] affirmed that it assented to the terms of the SDA, drafts of which were being exchanged," doc. 14 at 5, ¶ 12, but plaintiff failed to allege what those terms were and how defendant breached them, and the court will not assume that the parties agreed to all of the terms required by § 7(b).

10

contract claim plaintiff brought is one for breach of the Agreement, based on its allegation that defendant failed to execute the SDA, among other agreements. Doc. 14 at 7, ¶ 20. Plaintiff also makes much ado about the fact that § 7(c) contemplates that it would perform site work before the SDA's execution and that the parties discussed plaintiff's site work at length. E.g., id. at 7-8, ¶ 21; doc. 18 at 9, ¶ 22 & 10, ¶ 25. Again, none of that negates the express limitation of $50,000 plus accrued interest in § 13(b).[9]

For those reasons, the court cannot infer that plaintiff has a plausible right to relief in excess of $50,000 plus accrued interest for defendant's alleged breach of the Agreement. Therefore, the court finds that plaintiff's breach of contract claim should be dismissed to the extent it seeks as damages more than $50,000 plus accrued interest.[10]

---

[9]Besides, nothing in the Agreement requires plaintiff to perform any site work before the SDA's execution; it only says that plaintiff should comply with defendant's development criteria should it choose to do so. Doc. 16 at App. 009, § 7(c).

[10]Even if § 13(b) were absent from the Agreement, it is doubtful that the allegations would support granting plaintiff the damages it seeks. Plaintiff claimed that it incurred at least $2,242,309 in unspecified "project costs" related to the development and over $4 million in carrying costs. Doc. 14 at 6, ¶ 16. Both would seem to constitute "any site work, grading or other work [plaintiff] undertakes on the demised premises, shopping center or on [plaintiff's] adjacent property, and any other action, money spent or activity [plaintiff] undertakes in anticipation of [defendant] leasing the demised premises" which plaintiff agreed "is strictly at [its] sole risk and expense." Doc. 16 at App. 023, § 35.

C.   No Plausible Quantum Meruit Claim Has Been Alleged[11]

A plaintiff making a quantum meruit claim must allege: "(1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged." Hill v. Shamoun & Norman, LLP, 544 S.W.3d 724, 732-33 (Tex. 2018).

The gist of plaintiff's quantum meruit claim is that plaintiff performed site work for defendant's anticipated store and defendant refused to pay for it. Plaintiff alleged, in summary fashion, that "[defendant] accepted, used and enjoyed the services and materials." Doc. 14 at 8, ¶ 26. That statement only restates an element of the cause of action, and plaintiff failed to allege any facts that support it. In fact, the amended complaint suggests the opposite conclusion: that defendant, by withdrawing from the project and refusing to execute the

---

[11]Plaintiff brought its quantum meruit, promissory estoppel, and fraud by non-disclosure claims in the alternative in case the court did not find the SDA to be binding. The court is not addressing that issue because, as stated, it is irrelevant. But, because the court is partially dismissing plaintiff's breach of contract claim, the court will consider the merits of its alternative claims.

agreements necessary for it to come to fruition, did not accept, use, and enjoy the site work plaintiff performed. Plaintiff vaguely alleged that the planned store "was part of [defendant's] strategic growth plan" until it ultimately decided not to move forward with the project. Id. That allegation in no way suggests that defendant accepted, used, and enjoyed plaintiff's site work.

Moreover, the allegations do not suggest that defendant was reasonably notified that plaintiff expected payment for the site work. True, plaintiff restated that element in conclusory fashion in its amended complaint. See id. But, § 35 of the Agreement reads:

> [PLAINTIFF] ACKNOWLEDGES THAT UNTIL THE CLOSING ANY
> SITE WORK, GRADING OR OTHER WORK [PLAINTIFF] UNDERTAKES
> ON THE DEMISED PREMISES, SHOPPING CENTER OR ON
> [PLAINTIFF'S] ADJACENT PROPERTY, AND ANY OTHER ACTION,
> MONEY SPENT OR ACTIVITY [PLAINTIFF] UNDERTAKES IN
> ANTICIPATION OF [DEFENDANT] LEASING THE DEMISED
> PREMISES IS STRICTLY AT [PLAINTIFF'S] SOLE RISK AND
> EXPENSE.

Doc. 16 at App. 023, § 35. Plaintiff, by agreeing to be solely responsible for any pre-closing site work expenses, signaled to defendant that it did not expect to be paid for those expenses.

Thus, the court cannot infer from the allegations that plaintiff stated a plausible quantum meruit claim and finds that such claim should be dismissed.

D.  No Plausible Promissory Estoppel Claim Has Been Alleged

A plaintiff making a promissory estoppel claim must allege: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983). "Promissory estoppel is not applicable to a promise covered by a valid contract between the parties." Richter v. Wagner Oil Co., 90 S.W.3d 890, 899 (Tex. App.—San Antonio 2002, no pet.). "To support a finding of promissory estoppel, the asserted 'promise' must be sufficiently specific and definite that it would be reasonable and justified for the promisee to rely upon it as a commitment to future action." Comiskey v. FH Partners, LLC, 373 S.W.3d 620, 635 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). "The 'promise' also must be more than mere speculation concerning future events, a statement of hope, or an expression of opinion, expectation, or assumption." Id.

In support of its promissory estoppel claim, plaintiff alleged, in summary fashion, that "[defendant] promised [plaintiff] that it would reimburse [plaintiff] for the site work performed pursuant to the contemplated SDA." Doc. 14 at 9, ¶ 29. Plaintiff is presumably referring to § 7(b), in which, as discussed, the parties agreed that defendant would have no duty to close if the parties did not agree by the closing date to an

SDA that, among other things, imposed on defendant a duty to reimburse plaintiff for its share of the project costs. If that is what plaintiff is referring to, the existence of a contract covering the alleged promise bars plaintiff's claim.

Plaintiff could also be referring to the SDA that defendant allegedly assented to but never executed. In that case, as stated, plaintiff did not specify what terms the proposed SDA contained, so the court cannot infer that plaintiff might have relied on one of those terms to its detriment. And, if the contemplated SDA is a valid contract as plaintiff alleged, it too would bar its claim.

That leaves plaintiff with the above-quoted allegation as the only one supporting its claim that defendant made any promise on which it relied to its detriment. Plaintiff did not specify what statement of defendant, if any, caused plaintiff to believe that defendant made such a promise. Without knowing what the statement was, the court cannot infer that it was anything more than speculation, hope, opinion, expectation, or assumption, and that it was specific and definite enough to make plaintiff's reliance on it reasonable and justified. Moreover, plaintiff's failure to specify the offending statement and any circumstances surrounding it (such as the time and place in which it was made) fails to put defendant on notice of the basis of plaintiff's

claim so that it can defend itself effectively. See <u>Twombly</u>, 550 U.S. at 555.

Therefore, the court cannot infer from the allegations that plaintiff has a plausible promissory estoppel claim and finds that such claim should also be dismissed.

E.  <u>No Plausible Fraud By Non-Disclosure Claim Has Been Alleged</u>

A plaintiff making a claim of fraud by non-disclosure must allege:

> (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge.

<u>Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC</u>, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.). "In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship." <u>Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC</u>, 572 S.W.3d 213, 220 (Tex. 2019). But, "[t]here may also be a duty to disclose when the defendant: (1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily

disclosed some information, creating a duty to disclose the whole truth." Id.

Plaintiff failed to allege with particularity that defendant withheld any material information from it. Plaintiff alleged, in conclusory fashion, that "[defendant] knew of its plans not to go forward with opening a store on the Lowe's Tract, but failed to disclose this fact to [plaintiff]." Doc. 14 at 10, ¶ 33. But, plaintiff also alleged that defendant did disclose that information. See id. at 6, ¶ 14. Plaintiff presumably intended to argue that defendant learned of that information well before disclosing it, but the allegations do not support such a conclusion. Plaintiff did not allege when defendant determined that it would not proceed with opening the store and, therefore, when that disclosure should have occurred.[12] It did allege, on information and belief, that before Ellison took office as CEO on July 2, 2018, some unidentified party developed and communicated among defendant's officers Ellison's vision to close under-developing stores and re-evaluate store growth. Id. at 9, ¶ 32. Nothing in the complaint suggests that the allegation has any

---

[12]The court is not crediting plaintiff's still-vague allegation in its brief supporting its response that "sometime in July of 2019, [defendant] knew that it did not plan on going forward with opening a store on the Lowe's Tract," doc. 18 at 15, ¶ 42, because that allegation appears nowhere in its amended complaint.

relevance to the current dispute. Plaintiff did not, for example, allege that Ellison's vision included not opening the store at issue. Moreover, plaintiff failed to allege any of the facts that led it to that belief. Plaintiff also vaguely alleged, again on information and belief, that someone "quickly identified" the new store as one to cut. Id. "Quickly" does not indicate when that identification was made, nor did plaintiff allege who made it. And, as above, plaintiff failed to allege any of its reasons for holding that belief. Because of the vagueness of the allegations, the court cannot infer that defendant withheld its plans for any length of time such that defendant should have spoken of those plans earlier than it did.

In addition, plaintiff failed to allege facts suggesting that defendant had any duty to disclose that information. Plaintiff did not allege facts suggesting that any sort of confidential or fiduciary relationship existed between the parties that would give rise to such a duty. Plaintiff contended that such a duty existed because defendant "continued to make partial disclosures concerning performing under the Agreement." Id. at 10, ¶ 33. Assuming without deciding that such a theory is cognizable under Texas law, plaintiff failed to allege facts in support of its contention. Plaintiff made only vague allegations

about unspecified conversations between the parties. See, e.g., id. at 5, ¶ 12. Plaintiff did not allege what those partial disclosures were, when and where they were made, and who spoke on defendant's behalf. As a result, the court cannot infer that those "partial disclosures" gave rise to any duty to disclose. Thus, the court cannot infer that, assuming defendant failed to disclose material information, that it had any duty to disclose it to begin with.

For those reasons, the court cannot infer from the allegations that plaintiff stated a plausible fraud by non-disclosure claim and finds that such claim should also be dismissed.

* * * * * * *

In the last paragraph of the brief supporting plaintiff's response to the motion to dismiss, plaintiff requested that the court authorize it to file yet another amended complaint. Doc. 18 at 16, ¶ 45.

Local Civil Rule LR 5.1(c) requires that any document containing more than one pleading, motion, or other paper "clearly identify each pleading, motion, or other paper in its title." Local Civil Rule 15.1(a) further provides:

> When a party files a motion for leave to file an amended pleading . . . , the party must attach a copy of the proposed amended pleading as an exhibit to the

motion. The party must also submit with the motion an original and a judge's copy of the proposed pleading.

Plaintiff's request does not comply with any of these requirements. The brief does not identify any motion for leave to amend in its title. Nor did plaintiff attach a copy of its proposed amended complaint as an exhibit, and plaintiff did not submit an original or judge's copy of a proposed amended complaint.

Because of plaintiff's noncompliance, the court does not consider that plaintiff actually made a motion for leave to amend. Moreover, even if the court were to interpret what it said as a motion for leave, the court could not evaluate the merit of such a motion without any knowledge of what another amended complaint might say. In any event, plaintiff has had more than a fair opportunity to plead its best case. Therefore, the court is not granting plaintiff leave to replead again.

IV.

Order

The court ORDERS that the motion be, and is hereby, granted; that plaintiff's breach of contract claim be, and is hereby, dismissed with prejudice to the extent plaintiff seeks as damages more than $50,000 plus accrued interest; and that plaintiff's

quantum meruit, promissory estoppel, and fraud by non-disclosure claims be, and are hereby, dismissed with prejudice.

    SIGNED July 29, 2019.

JOHN McBRYDE
United States District Judge